The judgment appealed from is therefore affirmed.

———

(115 So. 62)

No. 26791.

### NOVELTY ADVERTISING CO., Inc., v. JOHN.

Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. Damages ⬚190—Evidence held not to justify finding that sale of plaintiff's coupon books ceased because defendant merchant refused to allow extra discount represented by coupons.

Where plaintiff contracted with defendant and other merchants to sell coupon books which would be redeemed by merchants in way of discounts, and defendant in putting on special net cash sale refused to allow extra discount represented by coupons, evidence, in plaintiff's action against defendant for loss to its business because of defendant's refusal, *held* not to justify finding that further sale of plaintiff's coupon books ceased because of defendant's action, and, even though it did cease, it was conjectural how many more books plaintiff could have sold in city.

2. Damages ⬚8—Not even nominal damages are allowable where defendant violated only letter of contract.

Where merchant contracted with plaintiff to redeem coupon books sold by plaintiff in way of discount, since defendant's refusal to accept coupons as extra discount in special net cash sale put on by defendant amounted only to violation of letter of contract, and not its spirit, nominal damages were not allowable.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Action by the Novelty Advertising Company, Inc., against Mike John. From a judgment for defendant, plaintiff appeals. Affirmed.

Robert Layton and W. F. Pipes, both of Monroe, for appellant.

W. B. Clarke, of Monroe, for appellee.

ST. PAUL, J. In February, 1923, plaintiff entered into a contract with the defendant and some 20 other merchants doing business in the city of Monroe, by which plaintiff was to sell books of coupons, which coupons were to be redeemed by said merchants in the way of discounts (say 10 per cent.) upon cash purchases until March 1, 1924.

The books were to be sold for $1 each, and netted plaintiff about 65 cents. Up to July 1st plaintiff had sold 1,000 books.

### I.

In July defendant put on a special net cash sale at a discount of about 30 per cent., during which sale he refused to allow the extra discount represented by the coupons. Both before and after this special sale, which lasted about 2 weeks, plaintiff accepted the coupons regularly.

Only some few coupons were presented during the sale, and when it was explained to the purchasers that the coupons could not be accepted during the sale because of the special circumstances thereof, but would be accepted after the sale was over, they were all satisfied except two, one of whom got his money back from plaintiff, and the other of whom would not take back his money and afterwards even used at least one of said coupons, but he threatened to have plaintiff's salesman arrested for obtaining money under false pretenses, though he did nothing of the sort.

### II.

[1] Plaintiff claims $10,000 damages for the loss resulting to its business by defendant's action as aforesaid, claiming that when

the news spread around that defendant was not accepting the coupons it could sell no more books. But the only evidence as to any damages that plaintiff might have sustained was an *estimate* that it could have sold 2,000 more books in Monroe, but for defendant's action (Transcript, 65), which would mean a loss of only $1,300, even if the claim be well founded.

### III.

But we do not think the claim well founded. We do not find that the complaint of the two dissatisfied customers traveled very far, and in our opinion their complaints were not the sole reason why plaintiff could sell no more books. Plaintiff's chief salesman testifies that he quit selling about July 1st, *before* he heard that defendant was refusing the coupons, in fact that was even before defendant had refused the coupons (Transcript, 92).

Be that, however, as it may, it is a purely speculative proposition whether the sale of the books ceased because defendant had refused to accept a few coupons under special conditions, well explained, or merely because their sale had reached the approximate limit to which it was capable of being extended; for all such plans have a limit of some sort, and in a city of the size of Monroe the 1,000 books sold represents about one book sold to every third head of a family [15,000 population meaning 3,000 heads of families].

### IV.

Our conclusion is that the evidence herein does not justify a finding that the sale of plaintiff's books ceased solely because of defendant's action, and even if it did it does not afford any basis whatever for estimating how many more books, if any, plaintiff could have sold in Monroe.

[2] And as plaintiff's action in refusing to accept the coupons under the special conditions above stated violated, at most, only the letter and not the spirit of the contract, we see no reason for allowing even nominal damages.

### Decree.

The judgment appealed from is therefore affirmed.